UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HASSAN HARAJLI, and
SUZAN BAYDOUN

   Plaintiffs,

vs.

ALI NASER, JANE DOE NASER, ERIC COLUMN,
ROBERT FARRIS, CITY OF DEARBORN, a Michigan
Municipal Corporation, MARK JABOUR,
MOHAMAD AJAMI, MICHAEL CELESKI,
and MAYOR MICHAEL GUIDO,

   Defendants.
_____/

Case No. 06-10486

HONORABLE JOHN FEIKINS
HONORABLE STEVEN D. PEPE

## REPORT AND RECOMMENDATION
## ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. #31)

  Plaintiffs filed a complaint February 3, 2006, alleging officials of the City of Dearborn and other Defendants, jointly and severally conspired to defame Plaintiffs and deny their civil rights in violation of 42 U.S.C. §§ 1983 and 1985 (Dkt. #1). Defendant Mohamad Ajami filed a Motion for Summary Judgment, which was in effect a motion to dismiss under FED. R. CIV. P. 12(b)(1) and (6) for lack of federal jurisdiction or failure to state a claim upon which relief can be granted (Dkt #14). In response, Plaintiffs filed both a First Motion to Amend Complaint as well as a separate Response to Defendant Mohamad Ajami's Motion for Summary Judgment on May 1, 2006 (Dkt. ##20, 21). Defendant Mohamad Ajami filed an Answer to Plaintiffs' First Motion to Amend Complaint, and a Reply to Plaintiffs' Answer to Defendant's Motion for

1

Summary Judgment (Dkt. ##23, 24). On June 28, 2006, Defendants Eric Column, Robert Farris, City of Dearborn, Mark Jabour, Michael Celeski and Mayor Michael A Guido also filed their Motion for Summary Judgement asserting that there is no genuine issue as to any material fact and asking for dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 56 (Dkt. #31).

Defendant Mohamad Ajami's Motion for Summary Judgment and Defendants Eric Column, Robert Farris, City of Dearborn, Mark Jabour, Michael Celeski and Mayor Michael A. Guido's Motion for Summary Judgement were referred to the undersigned for a report and recommendation under 28 U.S.C. §§ 636(b)(1)(B) and (C). On September 27, 2006, the undersigned issued a report and recommendation that Defendant Mohamad Ajami's Rule 12(b)(1) motion be granted for lack of jurisdiction and the case against him be dismissed without prejudice (Dkt. #41). It was further recommended that Plaintiffs' First Motion to Amend Complaint be denied as futile.

On September 27, 2006, related to the other Defendants' Motion for Summary Judgment (Dkt. #31), the undersigned also issued an order to show cause why this case should not be dismissed without prejudice pending the resolution of the state criminal charges against Plaintiff Harajli in light of the directions of *Feaster v. Miksch,* 846 F.2d 21 (6th Cir.1988), as modified by *Schilling v. White,* 58 F.3d 1081 (6th Cir. 1995), and *Shamaeizadeh v. Cunigan,* 182 F.3d 398 (6th Cir. 1999) (Dkt. #40). Responses were due by October 18, 2006.

On October 6, 2006, Plaintiffs filed their Motion for Enlargement of Time to Respond to the Magistrate's Report and Recommendation and Order to Show Cause Regarding Defendants' Motion For Summary Judgment in which they requested an extension to respond on or before November 18, 2006 (Dkt. #42). Plaintiffs indicated that their attorney of record, Cyrill C. Hall,

had recently undergone major surgery and required the extension to recover and return from medical leave. On October 13, 2006, the undersigned granted Plaintiffs an enlargement of time to November 18, 2006 (Dkt. #45).

On November 18, 2006, Plaintiff filed their second Motion for Enlargement of Time to Retain New Counsel to Respond to the Magistrate's Report and Recommendation and Order to Show Cause Regarding Defendants' Motion For Summary Judgment (Dkt. #46). Plaintiffs indicated that their attorney of record, Cyrill C. Hall, was now receiving chemotherapy and was very weak and not well. Attorney Hall had disclosed his complete medical condition to Plaintiffs and they decided to seek new lead counsel. Plaintiffs indicated current counsel would continue in this case as co-counsel, and assist in the orderly prosecution of this case. Plaintiffs sought for an enlargement of time up to and including February 25, 2007, to secure new lead counsel and bring him up to date on this matter. While sympathetic to Plaintiffs' counsel's medical condition, the extent of time sought was excessive in light of the earlier extension granted for substantially the same reason.[1]

Although the rules anticipate 21 days to file objections to reports and recommendations, 61 days had already passed at the time of Plaintiffs second request and they sought to extend the period to 151 days. Because this was excessive for filing objections to a report and recommendation notwithstanding the medical difficulties of Mr. Hall, Plaintiffs were ordered to respond to both the undersigned's Report and Recommendation and the Order to Show Cause on or before January 15, 2007.

---

[1] In addition, Defendants filed their motion for summary judgment on June 28, 2006, (Dkt. # 31) with a response due on July 24. Yet, on July18, Plaintiffs sought and received an extension of time to respond until August 30 (Dkt. #34 & #38).

As of January 17, 2007, Plaintiffs have failed to file a response to either the Report and Recommendation or Order to Show Cause Regarding Defendants' Motion For Summary Judgment. Because Plaintiffs have failed to show cause why Defendants' motion should not be granted and for the reasons indicated below, **IT IS RECOMMENDED THAT** Defendants' Motion for Summary Judgement be **GRANTED** and this case be dismissed without prejudice pending the resolution of the state criminal charges against Plaintiff Harajli.

## I. Factual Background

### A. The Underlying Wayne County Criminal Case against Plaintiff Hassan Harajli

In the early morning of November 14, 2004, Defendant and moving party Mohamad Ajami was brutally assaulted outside his home with a bat by a single assailant. This federal case at its core relates to a state investigation leading to felony charges being brought against Plaintiff Hassan Harajli and a Hassan Jamil Salame who allegedly conspired to have this attack occur.[2] That criminal case is still pending awaiting trial.

Mohamad Ajami's wife, Hanadi Ajami, who is the sister of the Plaintiff and whom he seeks to add as a defendant in his motion to amend, called the Dearborn Police Department, whose officers investigated.

---

[2] Certain of the facts stated in this background are drawn from state court transcripts and police documents attached to Defendants' June 28, 2006, Motion for Summary Judgment to which Plaintiff has not filed a response. While Plaintiff contests many of the facts stated in these state investigative files, there is no reasonable dispute as to the authenticity of the documents which contain these "true" or "untrue" claims against Plaintiff. Many of these underlying factual disputes as to whether Plaintiff encouraged the attack on Mohamad Ajami will be resolved in Plaintiff's upcoming criminal trial in the Wayne County Circuit Court. Yet, these court and police documents are being used here, not to resolve the underlying facts of who encouraged the attack on Mohamad Ajami and who lied about what or changed their stories, but rather to demonstrate what the Michigan courts and investigating law enforcement officers were told or otherwise had notice of leading to the state criminal complaint against Plaintiff.

Shortly after the assault, the police apprehended the brothers Hasan Ali Naser and Husain Ali Naser. Husain Naser confessed to the assault on Mohamad Ajami. Hasan Naser confessed to driving his brother to and from the scene of the assault. Both pled guilty on March 18, 2005, to assault with intent to do great bodily harm less than murder and felony firearm (Wayne County Circuit Court March 18, 2005, Plea Transcript, Case No. 04-12545, Dkt. #31, Ex. B). Upon further questioning, Hasan Naser noted that they had been encouraged to commit the assault on Mohamad Ajami and had been promised $2,000 by Hassan Salame, with an added $5,000 from Hassan Harajli (*Id.* at 17-18, 22-26).

While police records indicate that Hassan Jamil Salame and Plaintiff Hassan Harajli were suspects from the initial November 2004 investigation, it was not until June 8, 2005, that a felony complaint for assault with intent to do great bodily harm less than murder and a conspiracy as to the same issued from the 19th District Court, naming these two individuals (Dkt. #31, Ex. C and D). The police investigation notes that Ali Bazzi had earlier stated that he also had been solicited by Salame to do the assault, but refused because he was on probation (Dkt. #31, Ex. D). That report indicates that in July when Plaintiff Harajli was arraigned, he threatened litigation over this incident against Det./Sgt. E. Cullum who was then investigating (*Id.*).

On September 12, 2005, a preliminary examination of Hassan Salame and Plaintiff Hassan Harajli was held before Judge Leo Foran of the 19th District Court (Dkt. #31, Ex. E). Plaintiff Hassan Harajli in the present case contends that Defendant Mohamad Ajami accused him of the assault but thereafter recanted. At the Plaintiff's preliminary examination his attorney, who is representing Plaintiff also in this case, argued that Hasan Naser had not

5

originally indicated any promise of $5,000 from Hassan Harajli for the assault, but only added this later, apparently in his efforts of cooperation related to his plea agreement (*Id.* at p. 5). Hassan Harajli's counsel argued that the evidence showed at most that Harajli was present but silent when a discussion may have occurred with the Naser brothers concerning the assault (*Id.*).

Apparently it was argued that Ali Naser and Mohamed Ajami conspired to implicate Plaintiff in the assault "in an attempt to forestall civil actions taken by [Plaintiff] Harajli over a business deal between Harajli and Ajami"[3] (Dkt. #14, Attachment 2; Defendant Harajli's Motion to Quash Bindover, *People v. Hassan Jamil Salame and Hassan Harajli*, Wayne Co. Cir. Court, Case No. 05-009430-02). Judge Leo Foran noted Hassan Harajli was present at more than one meeting where the attack was discussed and at one meeting he allegedly offered the $5,000 bonus (Dkt. #31, Ex. E at 9). He bound both defendants over to the Circuit Court for trial on both counts. The bindover was challenged in the Wayne County Circuit Court. On February 22, 2006, Circuit Judge Cynthia Hathaway dismissed Count I (assault) against Plaintiff Harajli but upheld the conspiracy charge in Count II (Dkt. #22; Dkt. #21, p. 13). On May 25, 2006, Count I was reinstated by the Michigan Court of Appeals and this has been appealed by Plaintiff Harajli to the Michigan Supreme Court (*see,* Dkt. #31, Exhibit G; Mich. Ct. of Appeals Case No. 269031; Mich. Sup. Ct. Case No. 131676). As noted above this criminal case involving Counts I and II is currently pending in Wayne County Circuit Court awaiting trial.

B. <u>The Federal and State Claims in the Present Litigation</u>

In Plaintiffs' original civil complaint, they allege that Defendants, including the City of Dearborn and its Mayor Michael Guido and its police officers, Defendants Column, Farris and

---

[3] It is unclear which Naser brother is referred two because their names are Hasan Ali Naser and Husain Ali Naser.

Jabour, and Celeski, knew or should have known Plaintiff Hassan Harajli was not involved in the assault or any conspiracy to commit the assault. Plaintiff claims that Ali Naser got Mohamad Ajami to falsely implicate him. Mohamad Ajami allegedly told the doctors that Plaintiff alone assaulted him but later recanted (Complaint ¶ 19). Plaintiff claims the case against him was closed in 2004 for lack of evidence (*Id.* ¶ 20). He contends that without additional information or questioning of Plaintiff, the City, through Defendant Column, reopened the case against Plaintiff. Defendant Column used the "admittedly coerced" hearsay statement of Ali Bazzi [apparently the one that Bazzi had earlier been solicited to commit the assault on Mohamad Ajami] even though Bazzi recanted on the statement (*Id.* ¶¶ 27-29). Defendant Column told Plaintiff that he was going to get him because his was an Arab (*Id.* ¶ 30). Mohamad Ajami had disparaged Plaintiff's business in the Dearborn area concerning his honesty and propensity for violence (*Id.* ¶¶ 31-31).

In their original and proposed amended complaint, Plaintiffs allege under 42 U.S.C. §§ 1983 and 1985:

– violations of Plaintiff Hassan Harajli's civil rights to due process and equal protection by Defendants Column, Farris, Jabour (all City of Dearborn Police Officers), as well as the City of Dearborn and a conspiracy to accomplish this (Count I).[4]

– a conspiracy to violate federal civil rights by Defendant officers, Celeski and Guido for failure to adequately investigate evidence brought forth by Plaintiffs regarding alleged crimes by Defendant Mohamad Ajami (Count VIII).

Asserting supplemental jurisdiction, Plaintiffs allege:

– gross negligence by Defendants Column, Farris, and Jabour under M.C.L. § 691.1407

---

[4] In the proposed amended complaint, Plaintiffs add that the above mentioned Defendants acted "in conspiratorial conjunction with [D]efendants Ajami and Guni, and individually" (Plaintiffs' First Motion to Amend Complaint, Dkt. #20, p. 10). Defendant Abahtje Guni has been added to the proposed amended complaint.

(allowing for governmental employees to be sued for gross negligence while acting within their official capacities) ( Count II).

– defamation by Defendant Mohamad Ajami, (Count III), and by "Jane Doe" Nasser (with the proposed amendment changing the defendant to Hamadi Ajami[5] (Count IV).

– disparagement against Plaintiff Harajli's business by Defendants Ajami (with the proposed amended complaint seeking to add as a defendant Ahbatje Guni and to add a *Toledo Blade* defamatory newspaper article. Proposed amended complaint ¶ ¶ 38 and 70) (Count V).

– a civil conspiracy "to defame Plaintiff" against all defendants except the City of Dearborn (Count VI) (The proposed Amended Complaint adds Defendants Guni and Hanadi Ajami to Count VI).

– loss of consortium, caused by the distress of the above events, between Plaintiffs Harajli and Suzan Baydoun (Harajli's wife) (Count VII).

The proposed amended complaint also seeks to add :

– a defamation claim against Mohamad Ajami, Count IX (¶¶ 95-102) but this appears to be the original Count IV which was not deleted and it duplicates Count IV ( ¶¶ 61-68) of the proposed amended complaint.

– allege selective prosecution for refusing to investigate or prosecute Defendant Mohamad Ajami, against Defendant officers, Celeski and Guido (Count X).

– malicious prosecution against Defendant officers, Celeski, Guido, Ali Naser, and Mohamad Ajami (Count XI).

– abuse of process against Defendants officers, Celeski, Guido, Ali Naser, and Mohamad Ajami; Defendant Mohamad Ajami is also specifically alleged to "have filed repetitive frivolous actions" (Count XII).[6]

## II.    ANALYSIS

Summary judgment is appropriate only when there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

---

[5] Compare Plaintiffs' First Motion to Amend Complaint, Dkt. #20, p. 11, with Plaintiffs' Complaint and Jury Demand, Dkt. #1, p. 10.

[6] Counts X, XI and XII (the last two termed "IX" and "X" respectively in the proposed amended complaint) have been added.

Rule 56(c) mandates summary judgment against a party who, after adequate time for discovery, fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the initial burden of showing "the absence of a genuine issue of material fact." *Id.*, at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*, at 249-50.

Rule 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, *by affidavits or as otherwise provided in this rule*, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate*, shall be entered against him." Fed. R. Civ. P. 56(e) (emphasis supplied).[7]

---

[7] The Supreme Court has expressly rejected the motion that Rule 56(e) in any way alters the basic standard stated in Rule 56(c) for granting summary judgment. A party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant. In the language of Rule 56(e), summary judgment is only "appropriate" when the standard outlined in Rule 56(c) is met. The thrust of Rule 56(e) is that a party may not simply rest on the allegations in his pleadings in

A. Supplemental Jurisdiction

"The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue." *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 606-07 (6th Cir. 1998)(citing *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986)). "The existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself." *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). Thus, "[q]uite aside from whether the parties raise jurisdictional issues themselves--or even attempt to consent or agree to federal jurisdiction--federal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction" *(Id.* at 607).

The parties to a federal civil action cannot create subject matter jurisdiction where none exists. Thus, their stipulations do not confer jurisdiction where, for example, no diversity of citizenship or federal question is involved. *Bender v. Williamsport Area School Dist.*, 475 US 534 (1986). "Nothing is to be more jealously guarded by a court than its jurisdiction. Jurisdiction is what its power rests upon. Without jurisdiction it is nothing." *In re Mooney*, 841 F.2d 1003, 1006 (9th Cir. 1988).

A court may utilize supplemental jurisdiction as long as the complaint sets forth a claim

---

opposing a motion for summary judgment. Plaintiffs are not entitled "to get to the jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial . . . ." Thus in *R. E. Cruise, Inc. v. Bruggeman*, 508 F.2d 415 (6th Cir. 1975) (per curiam), we held that summary judgment was proper where the facts alleged in the complaint were directly contravened in the affidavits supporting the defendants' motion for summary judgment, and where the plaintiff's version of the facts was not presented in any deposition, affidavit, or other document on file, except the pleadings.

*Smith v. Hudson* 600 F.2d 60, 64 -65 (6th Cir. 1979) (citations omitted).

10

"arising under" federal law.  If such a claim is present in the complaint, a court has discretionary authority to adjudicate state law claims that are transactionally related to the federal claim.  This includes claims both against original parties and any properly-joined new parties.  *See*, 28 U.S.C. § 1367(a).  Thus, supplemental jurisdiction may "include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).  As long as all claims arise from the same nucleus of operative facts, the federal court can adjudicate state law claims against defendants who are not parties to the federal claims.

The same case or controversy test is broader than the same transaction or occurrence standard for permissive joinder of parties under Fed. R. Civ. P. 20(a).  "Congress intended to authorize the full constitutional limit of supplemental jurisdiction .... The state and federal claims (must) derive from a common nucleus of operative facts."  *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995).  Thus, if both the state and federal claims derive from a common nucleus of operative facts, then no diversity of citizenship or independent basis for federal jurisdiction need be shown as to such parties.  *See, Ammerman v. Sween*, 54 F.3d 423, 424-425 (7th Cir. 1995).

Yet, in federal question cases, a valid federal claim must be pleaded before a federal court can exercise supplemental jurisdiction.  If there is no federal claim to which the state law can be supplemented, then there can be no supplemental jurisdiction.  As the Ninth Circuit has stated: "it makes no sense to speak of pendent (supplemental) jurisdiction until after a court has independently acquired jurisdiction over a federal cause of action." *Hunter v. United Van Lines*, 746 F.2d 635, 649 (9th Cir. 1984).

This does not mean the plaintiff must prevail on the federal claim.  Supplemental

11

jurisdiction exists even when a federal claim fails for lack of merit, but the federal claim must not be insubstantial, i.e. obviously frivolous.  *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991).  If the federal claim is dismissed before trial, the supplemental state law claims may be dismissed as well without prejudice.  *See*, 28 U.S.C. § 1367 (c)(3).  Yet, if it is apparent that the federal claim is not yet ripe, the Court can decline supplemental jurisdiction under 28 U.S.C. § 1367 (c)(4) for "exceptional circumstances [where] there are other compelling reasons for declining jurisdiction."

Thus, assuming Plaintiffs are able to establish that all of their state claims against the City, its mayor, officers form part of the same case or controversy under 28 U.S.C. § 1367(a), there remains the substantial question whether the federal claims are yet ripe.

### B. Federal Civil Rights Jurisdiction

It is clear that if Plaintiff prevails on his civil rights claims against the federal claim defendants, he will have demonstrated a conspiracy to prosecute and convict him based on knowingly false evidence due to his Arab nationality.  That challenged criminal proceeding is currently pending in the Wayne County Circuit Court.

Principles of equity, comity and federalism in certain circumstances require federal courts to abstain from interference in deference to ongoing state proceedings.  *See, Younger v. Harris,* 401 U.S. 37 (1971).  *See also, Heck v. Humphrey,* 512 U.S. 477, 587 n.8 (1994) ("... if a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings").  In this circuit, the time to determine whether abstention is appropriate is when the federal complaint is filed. *Zalman v. Armstrong,* 802 F.2d 199, 204 (6th Cir. 1986).

In *Middlesex County Ethics Committee v. Garden State Bar Ass'n.,* 457 U.S. 423 (1982), the Supreme Court enumerated a three-part test to determine whether abstention is appropriate: (1) whether the proceedings involved constitute an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges *(Id.* at 432). All of those conditions appear to be met here.[8] Yet, more current case law suggests that prior to a favorable resolution of the underlying state criminal charge, there is no federal civil rights claim.

*Feaster v. Miksch,* 846 F.2d 21, 24 (6th Cir.1988), added that "when disposition of a federal action for damages necessarily requires the resolution of issues that will determine the outcome of pending state criminal proceedings, *Younger* requires that the federal action not proceed. *Feaster* sought to avoid federal civil litigation rulings "implying that a state conviction is *or would be* illegal." *Id.* at 22-23 (emphasis in original).

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) held that where a judgement in favor of a civil rights plaintiff alleging unconstitutional police conduct would necessarily imply the invalidity of his conviction or sentence the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated [*e.g.* "Reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to

---

[8] The filing of state criminal charges against Plaintiff clearly constitutes "an ongoing state judicial proceeding." The existence of criminal proceedings for a grave assault involves an "important state interest," namely the compliance with its criminal laws. Finally, as to the last test, Plaintiff has an adequate opportunity to challenge the legality, truthfulness and constitutionality of the Dearborn police and other alleged liars trying to frame Plaintiff in the state court proceedings. State criminal defendants possess equal protection and due process rights under the Fourteenth Amendment in state courts and the Supreme Court has noted the competence of state courts to adjudicate federal constitutional claims.

13

make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983"] (*Id.*).

*Feaster,* which was decided prior to *Heck* determined that the proper course for a federal district court was to stay the federal proceedings where plaintiff, who was a state court criminal defendant, filed a § 1983 action against the police officers. Yet, after the Supreme Court's holding in *Heck,* the Sixth Circuit explicitly held that this procedural device of *Feaster* was no longer good law. *Schilling v. White,* 58 F.3d 1081, 1085 (6th Cir. 1995). Furthermore, in *Shamaeizadeh v. Cunigan,* 182 F.3d 398, 399 (6th Cir. 1999), Plaintiff challenged a police search of his home, and the criminal charges were eventually dismissed prior to filing the litigation. The Sixth Circuit held that a federal civil rights claim concerning police misconduct related to criminal charges does not even accrue for statute of limitation purposes until the state trial and appeal processes have concluded. Those principle seem clearly to apply here.

If Plaintiffs prevail on their federal constitutional claims that would necessarily imply that a state conviction is *or would be* illegal because is was based on false evidence that was contrived because of Plaintiff's Arab nationality in violation of the equal protection clause of the Fourteenth Amendment. The criminal charges have not yet been dismissed or otherwise negated. Thus, under *Shamaeizadeh* Plaintiff's federal claims have not yet ripened into constitutional torts. Plaintiffs federal action was brought prematurely and currently they have pled no federal claim that would give this Court federal question jurisdiction. Without federal question jurisdiction, as least initially, this Court cannot exercise supplemental jurisdiction. At this time all of Plaintiffs' claims must be dismissed without prejudice.

**III.     RECOMMENDATION**

For the reasons stated above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** and this case be dismissed without prejudice pending the resolution of the state criminal charges against Plaintiff Harajli in light of the directions of *Feaster* as modified by *Schilling* and *Shamaeizadeh*. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 18, 2007                                                         s/Steven D. Pepe
Ann Arbor, Michigan                                                             United States Magistrate Judge

CERTIFICATE OF SERVICE

     I hereby certify that on <u>January 18, 2007</u>, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: <u>Laurie M. Ellerbrake, Cyril C. Hall, William W. Swor</u>, and I hereby certify that I have mailed United States Postal Service the paper to the following non-ECF participants:<u>Robert L. Akouri, 6528 Schaefer Rd., Dearborn, MI 48126</u>

                                <u>s/ James P. Peltier</u>
                                James P. Peltier
                                Courtroom Deputy Clerk
                                U.S. District Court
                                600 Church St.
                                Flint, MI 48502
                                810-341-7850
                                pete_peliter@mied.uscourts.gov